

**FILED**
**Mar 16, 2022**
**09:10 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **ANDREA WILHELM,** | ) | **Docket No. 2021-05-0320** |
| **Employee,** | ) | |
| **v.** | ) | |
| **WALGREEN CO.,** | ) | **State File No. 62588-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **AMERICAN ZURICH INS. CO.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

## COMPENSATION ORDER GRANTING BENEFITS

The threshold issue in this case is whether the Court has jurisdiction to hear Ms. Wilhelm's claim for medical and disability benefits. If jurisdiction is proper, the Court must determine whether the work accident was the primary cause of her need for knee-replacement surgery. After a March 3, 2022 compensation hearing, the Court holds that it has jurisdiction and Ms. Wilhelm is entitled to medical and permanent partial disability benefits related to her knee replacement.

### History of Claim

Ms. Wilhelm fell and injured her left knee at work on August 19, 2019. Walgreen accepted the claim and provided medical benefits. This included treatment with Dr. Jonathan Petit, who diagnosed a radial tear of the posterior horn of the medial meniscal root and performed surgery to repair the tear in October. During the operation, Dr. Petit saw evidence of a previous ACL repair and grade II to grade III chondromalacia in the medial femoral condyle.

Ms. Wilhelm's condition initially improved, but by April 2020, Dr. Petit concluded the meniscal repair had failed and recommended a knee replacement. He referred her to Dr. Scott McCall to discuss surgical options.

By the time Ms. Wilhelm saw Dr. McCall in June, she reported severe pain that was

limiting her daily activities and ability to work. He found that her knee had degenerated to the point that it was now "bone on bone," and he recommended a Stryker MAKO[1] total left-knee arthroscopy. Walgreen submitted the surgical recommendation to Utilization Review, which denied the MAKO procedure as not medically necessary under the treatment guidelines. Dr. McCall appealed the denial to the Bureau's Medical Director, who upheld the denial on July 27.

Ms. Wilhelm continued to treat with Dr. McCall and proceeded with the knee-replacement surgery under her health insurance. Because the surgery was unauthorized, Walgreen paid no temporary disability benefits.[2] Ms. Wilhelm reached maximum medical improvement on October 16, 2020, and returned to full-duty work at a higher wage than she was earning at the time of her injury.

In his deposition, Dr. McCall identified the work injury as the primary cause of Ms. Wilhelm's need for knee replacement. He explained that a tear of the meniscal root is problematic because it tends to allow the meniscus to sublux out of the joint, which he characterized as essentially "a full, complete meniscectomy." He went on: "You have no intact fibers. That transfers all of the patient's weight onto the articular cartilage of the knee . . . which causes rapid progression of arthritis."

Dr. McCall said that this is what happened to Ms. Wilhelm. Her post-surgery MRI on February 22 showed eighty-percent extrusion of the meniscus. This meant that the repair had failed, resulting in a rapid progression of arthritis. He testified that, without the root tear, she would not have needed the knee replacement at that time. Dr. McCall also explained that the scans, as well as what he observed during surgery, showed a progression from mild chondromalacia to bone-on-bone in about six months. He added that this was common, and he had seen similar degeneration in as little as three months after an attempted root repair.

For these reasons, and because Ms. Wilhelm's knee was functioning with no problems before August 2019, Dr. McCall said the work injury was the primary cause of her need for knee replacement. As for impairment, he assigned a rating of ten percent. When asked about the impairment rating for just the meniscal repair surgery, Dr. McCall stated it would have been three percent.

On cross-examination, Dr. McCall acknowledged that Ms. Wilhelm had ACL reconstruction surgery for her left knee in 1998, but he said that it had not resulted in post-traumatic arthritis. He stated, "If she was going to get post-traumatic arthritis from the ACL, that would have already happened."

---

[1] "Stryker MAKO" refers to a robot-assisted surgical procedure.
[2] The parties stipulated that Ms. Wilhelm received short-term disability benefits through a Walgreen-funded program.

Dr. McCall was also shown a Physician Certification Form he signed in February 2021 certifying that Ms. Wilhelm no longer had the ability to perform her pre-injury occupation. He did not remember signing the form or why he did. He suggested he might have misread the form or made a mistake.

At Walgreen's request, Dr. William Gavigan performed a records review and gave a deposition. He agreed that knee-replacement surgery was a reasonable option to treat Ms. Wilhelm's arthritis. However, he said the need for knee replacement was "more than fifty percent probability caused by the ongoing arthritis." He felt that arthritis was a degenerative condition from the old ACL injury because "the torn meniscus would not result in the joint space narrowing that quickly." Although he conceded that the meniscus injury accelerated her condition, he maintained that the pre-existing arthritis was the primary cause of her need for knee replacement.

Ms. Wilhelm testified that she had no problems or pain with her knee after she recovered from the 1998 ACL repair. Her job required her to stand and walk about seven or eight hours a day, and until this injury, she was able to do her work without any problems or knee pain. Further, her knee did not affect her other daily activities.

Ms. Wilhelm asked the Court to award permanent partial disability benefits based on Dr. McCall's ten-percent impairment rating. She also asked that Walgreen pay the medical bills from her knee replacement.

Walgreen contended that the Court does not have jurisdiction over the knee replacement issue because she did not exhaust her administrative remedies before filing her Petition for Benefit Determination. Alternatively, it argued her claim is barred because her petition was not timely filed. Walgreen further claimed that Ms. Wilhelm is not entitled to any benefits related to her knee replacement because the need for that procedure was not primarily caused by her work injury.

**Findings of Fact and Conclusions of Law**

Ms. Wilhelm, as the employee in a workers' compensation claim, has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a compensation hearing, she must show by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015).

*Jurisdiction*

Walgreen first argued that Ms. Wilhelm's claim must be denied because she did not comply with timing provisions in the Bureau's Utilization Review regulations.

Specifically, it argued that she failed to timely file a petition after the Medical Director upheld denial of the knee replacement.

Tennessee Compilation Rules and Regulations 0800-02-06-.07(6) (January, 2017) provides that any party disagreeing with the Medical Director's decision "may file a Petition for Benefit Determination (PBD) with the Court of Workers' Compensation Claims within seven business days of the receipt of the determination." Because the Medical Director issued his decision in this case on July 27, 2020, and Ms. Wilhelm did not file her petition until April 7, 2021, Walgreen contended she has no right to now contest the denial. The Court disagrees for several reasons.

First, although Walgreen introduced a copy of the Medical Director's letter into evidence, Ms. Wilhelm testified that she never received it. Walgreen offered no evidence to the contrary, including no proof as to when, how, or even if the letter was mailed. The Court found Ms. Wilhelm to be a credible witness throughout the hearing and accepts this testimony. Similarly, the parties submitted no evidence as to when Ms. Wilhelm first saw the letter. Thus, the unrebutted proof is insufficient to determine when or if she received the Medical Director's decision. Under the explicit text of Rule 0800-02-06-.07(6), this means the Court cannot find that the seven-day period was ever triggered.

Further, even if Ms. Wilhelm had received the denial notice, the effect of Rule 0800-02-06-.07(6) is not what Walgreen argued. The rules do not suggest that the seven-day period operates to limit injured employees' access to the Court. Rather, other subsections explain the consequence of missing the seven-day window. Rules 0800-02-06-.06(7)(a) and 0800-02-06-.07(5) state that the Medical Director's denial "shall remain effective for a period of 6 months from the date of the decision" unless there is "material change documented by the treating physician that supports a new review or other information that was not used by the [reviewing physician] in making the initial decision." In other words, the Medical Director's denials are not permanent. If Ms. Wilhelm had received the denial and failed to file a petition within seven business days, the only effect in the rules would have been a six-month waiting period before she could resubmit the surgical request to Utilization Review. The rules do not preclude her filing a petition after the expiration of that period.

Walgreen also argued that Ms. Wilhelm's failure to file the petition within seven days means that the Court has no jurisdiction over this claim because she failed to exhaust her administrative remedies.[3] It cited *Tristar Centennial Med. Ctr. v. Pugh*, No. M2016-02470-SC-R3-WC, 2018 Tenn. LEXIS 63 (Tenn. Workers' Comp. Panel Feb. 15, 2018), for the proposition that "where a statute provides an administrative remedy, such remedy must

---

[3] Walgreen argued in the alternative that Ms. Wilhelm failed to exhaust her administrative remedies because she failed to appeal the Medical Director's decision. This argument is without merit because, other than filing a petition, the rules provide no other "appeal" or method of challenging the Medical Director's decision.

first be exhausted before the courts will act." This is an accurate statement of law, but Walgreen urged the Court to overlook the fact that *Tristar* was decided under prior law. The Court cannot do this.

The Supreme Court has held that, "[U]nless the statute providing for an administrative remedy requires exhaustion [of remedies] 'by its plain words,' an administrative appeal is not mandatory[.] Absent a statutory mandate, the exhaustion of the administrative remedies doctrine is a matter of judicial discretion." *Thomas v. State Bd. of Equalization,* 940 S.W.2d 563, 566 n.5 (Tenn. 1997).

Tennessee Code Annotated section 50-6-124 empowers the Bureau to establish a utilization review program. Nothing in the current version of that section or the resulting rules requires an employee to exhaust administrative remedies before filing a petition seeking benefits after a Utilization Review denial. In fact, the administrative procedure of filing a petition to challenge the Medical Director's denial is couched in permissive (a party "may file"), not mandatory, terms. Nothing in the plain words of the Workers' Compensation Law or the Utilization Review regulations mandates that the *only* way to challenge the Medical Director's denial of treatment is to file a petition within seven business days of that denial. At most, it might be argued that a Court is constrained from acting on the issue until the six-month period expires. However, once six months have passed, as here, even that argument is untenable. In this situation, the Court can consider remedies sought by a party who disagrees with the Medical Director's decision. Therefore, Walgreen's jurisdiction argument is without merit.

*Causation*

Ms. Wilhelm must show that her injuries arose primarily out of and in the course and scope of her employment. *See* Tenn. Code Ann. § 50-6-102(14)(A). Neither of the physicians disputed Ms. Wilhelm's need for knee-replacement surgery.[4] Instead, they disagreed on whether that need was primarily caused by her work injury.

A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.*

Although Dr. McCall is the authorized treating physician, his causation opinion is not afforded a presumption of correctness because he was not selected from a panel of

---

[4] Neither, apparently, did the Utilization Review physician. Instead, it appears the only reason the surgery was not approved was the proposed use of the MAKO robot.

physicians. *See Gilbert v. United Parcel Serv., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at \*13 (June 7, 2019). However, after reviewing the doctors' testimony and considering the other factors set out in *Brees*, the Court finds Dr. McCall's opinion to be more persuasive. He not only treated Ms. Wilhelm, but also he performed the surgery and personally observed the interior condition of her knee.

Case law generally supports this conclusion. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991); *see also Smith v. TrustPoint Hosp., LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at \*21 (Jan. 6, 2021) (trial court did not err in accepting the authorized treating physician's opinion over that of another expert, where the authorized physician had the benefit of seeing the employee's condition during surgery, which confirmed his pre-operative diagnoses, and where the authorized physician "followed Employee as a patient and saw her lack of progress with conservative care firsthand.")

Dr. Gavigan, on the other hand, performed a record review. He never examined Ms. Wilhelm or spoke with her about her injury or the onset and progression of her symptoms. He was unfamiliar with the procedure used in her surgery, and no evidence showed that he personally looked at any of her x-ray or MRI films.

These differences matter because the central dispute between the doctors is the extent to which Ms. Wilhelm's pre-existing arthritis caused the need for her knee replacement. Dr. Gavigan focused on the chondromalacia observed by Dr. Petit, which was not caused by the work injury. Then, a few months after the meniscus surgery, the x-rays showed a loss of joint space, which Dr. Gavigan agreed was a new finding. Less than a month later, the joint space was completely collapsed. He characterized this as "advanced arthritis" justifying a knee replacement, but he concluded that the primary cause of the need for knee replacement was the ongoing arthritis. The basis for this opinion was, "I believe the torn meniscus would not result in the joint space narrowing that quickly."

Dr. McCall, on the other hand, provided a detailed explanation of how meniscal root tears commonly cause this rapid progression of arthritis and said he had observed similar degeneration in as little as three months after an attempted root repair. While he acknowledged Ms. Wilhelm might have needed a knee replacement later in life, she would not have needed it at this time, were it not for the work injury.

Walgreen contended that Dr. McCall's execution of the Physician Certification Form, after Ms. Wilhelm had already returned to work, suggested that his testimony was too biased to be reliable. The Court disagrees. The doctor could not recall why he had signed the form and believed he did so by mistake. Without more, this is insufficient to disregard Dr. McCall's thorough explanation of the mechanism of injury or to question the veracity of his testimony. Further, his conclusion about the rapid decline of Ms. Wilhelm's

knee condition is supported by her unrefuted testimony that until this injury, she was able to do her work without any problems or knee pain.[5]

Finally, Walgreen objected to what it perceives as a return to the liberal construction of the statute in Utilization Review disputes, based ostensibly on the treating physician's presumption of correctness.[6] As applied to this case, this argument improperly conflates the issues of causation and medical necessity, and it is unpersuasive on both counts. Walgreen's argument is inapplicable to the issue of causation in this case, because, as noted above, Dr. McCall's opinion is not entitled to that presumption. Instead, his opinion was simply more persuasive than Dr. Gavigan's, and Utilization Review does not address causation questions.

On the other hand, Dr. McCall *is* presumed to be correct on the question of medical necessity and reasonableness. *See* Tennessee Code Annotated section 50-6-204(a)(3)(H). However, this was not an issue for the hearing, as all the doctors agreed knee replacement was necessary and reasonable. To the extent the necessity of the MAKO procedure was called into question, that issue expired at the end of the six-month period in the rules. Further, as Walgreen offered no evidence regarding the Utilization Review physician's interpretation of the treatment guidelines, the proof would have been insufficient to overcome the presumption.

For these reasons, the Court finds that Ms. Wilhelm met her burden of proving by a preponderance of the evidence that her need for knee replacement was primarily caused by the August 19, 2019 work injury.

*Permanent Disability*

Because Ms. Wilhelm's knee replacement is compensable, she is entitled to receive

---

[5] While causation of an injury must be shown by expert medical testimony, medical proof "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life & Cas. Co.*, 2015 TN Wrk Comp App Bd LEXIS 15, at *9 (May 27, 2015).

[6] Walgreen asked, "What's the employer supposed to do? Is it supposed to pay just because the ATP recommended it?" It maintained it chose not to pay for this procedure "because it was told it didn't have to. . . We have rules, and we should follow those rules." The Appeals Board addressed this question in *Walls v. United Technologies Corp.*, 2021 TN Wrk Comp App Bd LEXIS 27, at *22, 23 (Aug. 6, 2021). "Nothing in the statute relieves an employer of its burden of proof or the consequences of its decision to deny medical treatment merely because it sought utilization review of the prescribed treatment, then relied on the reviewing physician's 'decertification' recommendation. The utilization review provider does not deny an employee's request for medical treatment, nor does the Bureau's Medical Director. Ultimately, the decision to approve or deny medical treatment recommended by an authorized physician rests with the employer and, perhaps, its insurer. An employer can choose to authorize treatment even if its utilization review physician recommends 'decertification.' *See* Tenn. Comp. R. & Regs. 0800-02-06-.06(6)(a) . . . [I]t is the employer that must accept the consequences of its decision to deny such treatment if that decision turns out to be 'erroneous, incorrect, or otherwise inconsistent with the law or facts.'"

permanent partial disability benefits for that condition. *See* Tenn. Code Ann. § 50-6-207(3)(A).

Dr. McCall testified that the rating for Ms. Wilhelm's knee replacement under the *AMA Guides,* 6th edition is ten percent to the body. This equals forty-five weeks of permanent partial disability benefits at the stipulated compensation rate of $921.83, or $40,560.52. The parties agreed that Walgreen was entitled to a set-off of $1,475.87, based on an overpayment of employer-funded short-term disability paid instead of temporary disability benefits. Thus, her permanent partial disability award is $39,084.65.

*Medical Benefits*

The Workers' Compensation Law requires an employer to provide reasonable, necessary treatment at no cost to the injured worker. Tenn. Code Ann. § 50-6-204. The parties stipulated that, if the Court found the knee replacement compensable, Walgreen would be responsible for satisfying any outstanding claims for payment, subrogation, or reimbursement of the related medical expenses. Therefore, Walgreen shall provide future medical benefits with Dr. McCall and shall pay Ms. Wilhelm's medical providers and health insurer under the fee schedule. It shall also reimburse Ms. Wilhelm for her out-of-pocket payments.

**IT IS, THEREFORE, ORDERED** as follows:

1. Walgreen shall provide reasonable and necessary future medical benefits with Dr. McCall for Ms. Wilhelm's left-knee work injury.

2. Walgreen shall reimburse the health insurer under the fee schedule for payments to Dr. McCall, the surgery center, physical therapy, and any other providers for her knee-replacement surgery.

3. Walgreen shall reimburse Ms. Wilhelm for her out-of-pocket payments from her knee-replacement surgery.

4. Walgreen shall pay Ms. Wilhelm permanent partial disability benefits of $39,084.65.

5. Ms. Wilhem's attorney is entitled to a twenty-percent fee from this award under Tennessee Code Annotated section 50-6-226(a)(1), or $8,112.10. Ms. Wilhelm's attorney may file a motion for discretionary costs and an affidavit under Rule 54 of the Tennessee Rules of Civil Procedure within seven days of the date of this Order.

6. The Court taxes the $150.00 filing fee to Walgreen, to be paid to the Court Clerk

under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022) within five business days of this order becoming final, and for which execution might issue if necessary.

7. Walgreen shall file a Statistical Data Form (SD-2) with the Court Clerk within five business days of the date this order becomes final.

8. Unless appealed, this order shall become final thirty days after entry.

**ENTERED March 16, 2022.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Transcript of Dr. William Gavigan's deposition
2. Transcript of Dr. Scott McCall's deposition
3. Medical Director's letter of July 27, 2020
4. June 10, 2020 Utilization Review report of Dr. Steven Arsht
5. Ms. Wilhelm's responses to Walgreen's Requests for Admissions

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Scheduling Order
5. Employer's Pre-Hearing Brief
6. Employee's Pre-Hearing Brief
7. Joint Pre-Compensation Hearing Statement
8. Employer's Witness and Exhibit List
9. Employee's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on March 16, 2022.

| Name | Certified Mail | Email | Service Sent To |
|---|---|---|---|
| Jill T. Draughon, Employee's Attorney | | **X** | jdraughon@hughesandcoleman.com |
| John R. Lewis, Employer's Attorney | | **X** | john@johnlewisattorney.com |

_____
**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov



<u>Compensation Hearing Order Right to Appeal</u>:

        If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court.  To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board.  *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure.  If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____    ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*